NOT RECOMMENDED FOR PUBLICATION

File Name: 05a0709n.06
Filed: August 16, 2005

## No. 04-6168

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

SHIRLEY M. BREWSTER,

     Plaintiff-Appellant,

v.

JO ANNE B. BARNHART, COMMISSIONER
OF SOCIAL SECURITY,

     Defendant-Appellee.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE

_____/

BEFORE:    CLAY, GILMAN, and COOK, Circuit Judges.

**CLAY, Circuit Judge.** In this appeal from the district court's grant of summary judgment to Defendant, Jo Anne B. Barnhart, Commissioner of Social Security ("the Commissioner"), Plaintiff, Shirley M. Brewster ("Brewster"), challenges the denial of her application for Social Security benefits, filed under the Social Security Act, 42 U.S.C. § 401 *et seq.* Specifically, Brewster contends that the Administrative Law Judge ("ALJ") who reviewed her case wrongly determined that he was bound by a prior ALJ's finding that Brewster's past relevant work included work at a light exertional level.

For the reasons that follow, we hold that the ALJ correctly determined that he was estopped from reconsidering a prior finding on Brewster's past relevant work, and we **AFFIRM** the district court's grant of summary judgment.

## BACKGROUND

Brewster was born on November 25, 1943, and has a high school equivalency degree. The record before this Court contains a great deal of documentation of various medical problems Brewster has experienced; however, we will not summarize it here, inasmuch as that evidence is not in dispute. Rather, the key and disputed issue in this case relates to Brewster's past relevant work.

Brewster filed an application for Social Security disability benefits on October 8, 1997, alleging disability since November 26, 1995. A hearing on that claim was conducted by Administrative Law Judge ("ALJ") Leonard Gajewski on September 17, 1998. Judge Gajewski issued a decision unfavorable to Brewster on November 24, 1998, when Brewster was fifty-four years old. Judge Gajewski found that Brewster "lacked the residual functional capacity to lift and carry more than twenty pounds, or more than ten pounds on a regular basis, or perform tasks requiring more than 'frequent' climbing, balancing, stooping, kneeling, crawling, and crouching." Judge Gajewski found that Brewster could not "perform tasks precluded by moderate difficulties in maintaining social functioning," concentration deficiencies limit her to "understanding, remembering and carrying out simple, repetitive tasks," and "she should avoid frequent interaction with the general public."

Judge Gajewski also found that "in her past work as an assembly line worker at the light level, as performed by [Brewster] and as generally performed in the national economy, [Brewster]

was not required to lift more than twenty pounds, interact with the public on a regular basis, or perform tasks precluded by her nonexertional limitations." Judge Gajewski noted that this was in contrast to her prior jobs as a waitress and as an "assembler/machine operator," which were at the medium level. Judge Gajewski therefore concluded that Brewster's impairments did not prevent her from performing her past relevant work as an assembly line worker and that she was not disabled.

Brewster filed the benefits application at issue in the instant appeal on October 5, 2000, alleging disability since November 25, 1998, the day after Judge Gajewski's decision. That application was denied initially and upon reconsideration. Brewster requested a hearing, which was held before ALJ William Davis, in Knoxville, Tennessee, on July 3, 2001. Judge Davis issued an unfavorable decision on March 22, 2002, and the Appeals Council declined review on September 13, 2002.

Judge Davis found that Brewster's residual functional capacity through the relevant period was as follows: "to perform lifting and carrying of 20 pounds occasionally and 10 pounds frequently, and to sit or stand/walk each for 6 of 8 hours, provided she perform no more than frequent postural activities, and no jobs requiring frequent contact with the general public or more than simple, repetitive tasks." These findings intentionally mirrored those of Judge Gajewski, as Judge Davis noted that there was no evidence of an improvement or decline in Brewster's functional capacity since the prior ALJ's determination. Brewster does not dispute Judge Davis' findings regarding her residual functional capacity.

More critical to this appeal was Judge Davis' determination that "claimant's past relevant work as an assembly line worker did not require the performance of work-related activities

precluded by her residual functional capacity" through the relevant period. Brewster challenges the determination that her residual functional capacity allows her to perform any of her prior relevant work. Brewster relies in part on what she describes as new vocational evidence developed by the Commissioner in relation to the application at issue here. Specifically, she points to the report of a vocational specialist submitted on March 28, 2001, which states that she could return to her past relevant job as a "casket coverer,"[1] but classifies that job at a medium exertional level. Judge Davis specifically noted that report in his findings, but discounted the job classification because Judge Gajewski had already classified the same past work experience as "light," and no new evidence had been submitted to require that the issue be reconsidered.

Pursuant to 42 U.S.C. § 405(g), Brewster filed a civil action for judicial review of the Social Security Administration's decision on November 5, 2002. Brewster then moved for judgment on the pleadings, and the Commissioner moved for summary judgment. On August 8, 2004, the district court denied Brewster's motion for judgment on the pleadings, granted the Commissioner's motion for summary judgment, and affirmed the decision of the Commissioner. Brewster filed a motion to

---

[1]The job referred to by the vocational specialist as "casket coverer" is the same job that Judge Gajewski and Judge Davis refer to as "assembly line worker." Brewster contends that the ALJs erred in asserting that she worked as an assembly line worker. Quite apart from the question of whether the vocational specialist's report was even required to be considered by Judge Davis, which is the major issue in this case, whether Brewster's former job should be referred to by one name or another is a semantic issue of no import to this appeal. The vocational specialist included Brewster's description of her work as a "casket coverer" in the report: "[S]he took casket lid off assembly line sprayed it with glue put fabric on lid stamped it in put lid back on line for next step in assembly." Brewster's work could thus be broadly described as "assembly line work" and specifically described as "casket coverer."

4

alter or amend the judgment under Federal Rule of Civil Procedure 59(e) on August 23, 2004; which was denied. Brewster then filed a notice of appeal to this Court on September 27, 2004.

## DISCUSSION

I. **WHETHER THE ADMINISTRATIVE LAW JUDGE (ALJ) PROPERLY ADOPTED A PRIOR ALJ'S CLASSIFICATION OF PLAINTIFF'S PAST RELEVANT WORK.**

### 1. Standard of review

"Judicial review of the [Commissioner's] decision is limited to determining whether the [Commissioner's] findings are supported by substantial evidence and whether the [Commissioner] employed the proper legal standards in reaching her conclusion." *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).

This appeal does not require us to consider whether substantial evidence supported the finding that Brewster was not entitled to benefits, rather, the only issue is whether Judge Davis employed the proper legal standard in determining that he was bound by Judge Gajewski's prior determination of Brewster's past relevant work experience.

### 2. Legal standards for determining whether a plaintiff is disabled under the Social Security Act

Under the Social Security Act, a person (other than one who is both blind and over age fifty-five) is defined as disabled

> only if his physical or mental impairment or impairments are of such severity
> that he is not only unable to do his previous work but cannot, considering his
> age, education, and work experience, engage in any other kind of substantial
> gainful work which exists in the national economy, regardless of whether
> such work exists in the immediate area in which he lives, or whether a

specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The ALJ follows a "five-step sequential evaluation process" to determine whether a claimant is disabled within the meaning of the Social Security Act. If a finding of disability or non-disability can be made at one of the steps in the process, the determination will be made then and the ALJ will not reach the next step. The five steps are laid out at 20 C.F.R. § 404.1520 as follows:

1) the ALJ considers the claimant's work activity. If the claimant is doing substantial gainful activity, she is not disabled.

2) the ALJ considers the severity of the claimant's medical impairment. If the claimant does not have a severe medically determinable physical or mental impairment (or a combination of impairments that is severe) that meets the duration requirement of § 404.1509, she is not disabled.

3) If the claimant has an impairment that meets or equals one of the listings in Appendix 1 of this subpart and meets the duration requirement, the claimant is disabled.

4) the ALJ assesses the claimant's residual functional capacity and her past relevant work; if she is still able to perform her past relevant work, she is not disabled.

5) at the last step, the ALJ considers the assessment of the claimant's residual functional capacity and her age, education, and work experience to see if she can make an adjustment to work. If she can make an adjustment to other work, she is not disabled. If she cannot make an adjustment to other work, she is disabled.

20 C.F.R. § 404.1520.

The regulations further explain that at Step 4, the ALJ will compare his or her assessment of the claimant's residual functional capacity with the physical and mental demands of the

claimant's past relevant work (which is defined as work done within the past 15 years that represented substantial gainful employment and lasted long enough for the claimant to learn to do it). This inquiry is conducted regardless of the claimant's age. If the ALJ decides at Step 4 that the claimant has the residual functional capacity to perform her past relevant work, the ALJ will conclude that the claimant is not disabled, without reaching the analysis set forth at Step 5. 20 C.F.R. § 404.1560(b).

> **3. Whether Judge Davis was collaterally estopped from reconsidering the exertion level of the claimant's past relevant work.**

This Court will apply collateral estoppel to preclude reconsideration by a subsequent ALJ of factual findings that have already been decided by a prior ALJ when there are no changed circumstances requiring review. For example, in *Dennard v. Sec'y of Health & Human Servs.*, 907 F.2d 598 (6th Cir. 1990), the plaintiff filed an initial disabilities claim with the Social Security Administration, which was reviewed by an ALJ who determined that the plaintiff was not able to perform his past relevant work. In a subsequent application for benefits, a second ALJ determined that the plaintiff was able to perform his past relevant work. Citing 42 U.S.C. § 405(h), which provides that "the findings and decision of the secretary after a hearing shall be binding upon all individuals who were parties to such a hearing," and not reviewable except as provided, this Court held that the second ALJ was bound by the first ALJ's finding with respect to the plaintiff's ability to perform his past relevant work, and reversed.

In *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 839 (6th Cir. 1997), we reiterated that § 405(h) requires finality in Social Security decisions, holding that "[a]bsent evidence of an

improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." In that case, we held that where the first ALJ to review a claim for benefits by the plaintiff had determined that her residual functioning capacity was for "sedentary" work, a second ALJ's subsequent finding that she could perform "medium" work was precluded.

In both cases, this Court emphasized the language of § 405(h), which describes as binding all findings of the ALJ. We have yet to decide whether a party asserting collateral estoppel in a Social Security case, in addition to making the § 405(h) showing that a prior ALJ has made a finding on the same question sought to be litigated, must establish the traditional elements of collateral estoppel. These are: 1) whether "the issue in the subsequent litigation is identical to that resolved in the earlier litigation," 2) whether "the issue was actually litigated and decided in the prior action," 3) whether "the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation," 4) whether "the party to be estopped was a party to the prior litigation (or in privity with such a party)," and 5) whether "the party to be estopped had a full and fair opportunity to litigate the issue. *Hammer v. I.N.S.*, 195 F.3d 836, 840 (6th Cir. 1999).

Brewster argues that traditional collateral estoppel rules are not supplanted by § 405(h). That position finds some support in an unpublished case in which this Court applied traditional collateral estoppel rules without citation to § 405(h) in concluding that collateral estoppel did not bar a second ALJ from considering the issue of whether a plaintiff's skills were transferable. *Rogers v. Comm'r of Soc. Sec*, No. 99-5650, 2000 WL 799332 (6th Cir. June 9, 2000) (unpublished). We will leave for another day the resolution of the applicability of traditional collateral estoppel rules to cases also governed by § 405(h) because, for reasons that we will explain, we are convinced that even under

the traditional collateral estoppel framework, Judge Davis was bound by Judge Gajewski's earlier finding on Brewster's past relevant work.

Brewster argues that under traditional collateral estoppel rules, Judge Gajewski's finding that her residual functional capacity permitted her to perform her past relevant work as an assembly line worker/casket coverer does not preclude a finding to the contrary by Judge Davis. (In particular, Brewster would like Judge Davis to have found that her past relevant work required medium exertion, not light exertion as Judge Gajewski found.) Brewster specifically invokes the requirement under the traditional framework that a finding be "necessary and essential" to a judgment in order to have preclusive effect, and insists that Judge Gajewski's finding with respect to her past relevant work was not "necessary and essential." Because we conclude, to the contrary, that Judge Gajewski's finding was "necessary and essential" to the judgment, and because there is no dispute that the other elements of collateral estoppel are satisfied in this case, we hold that Judge Davis was collaterally estopped from revisiting the issue of Brewster's past relevant work.

Judge Gajewski found that Brewster had the residual functional capacity to perform light work, and that her past relevant work as an assembly line worker was also at a light exertional level, and, hence, that she was capable of performing her past relevant work and thus not disabled. These findings were made at Step 4 of the five-step sequential evaluation process. Brewster contends that Judge Gajewski's finding that her work as an assembly line worker should be classified as light was not necessary or essential to the judgment. According to Brewster's argument, if Judge Gajewski had not been able to make a disability determination at Step 4, he would have been required to move on to Step 5 of the evaluation process. At Step 5, Judge Gajewski would have considered his

9

assessment of Brewster's residual functional capacity and her age, education, and work experience to see if she could make an adjustment to work. As part of that analysis, Judge Gajewski would have consulted Grid Rule 202.14, set forth at 20 C.F.R. § 404, Subpart P, App. 2, which instructs that a high school graduate between the ages of fifty and fifty-four whose residual functional capacity is limited to light work will not be found disabled regardless of her previous work experience.

Judge Gajewski's decision issued the day before Brewster's fifty-fifth birthday. Thus, Brewster contends that she would have been found not disabled regardless of her past relevant work experience at Step 5 of the evaluation process if Judge Gajewski had not determined at Step 4 that she was capable of performing her prior light work. According to Brewster, this means that Judge Gajewski's finding that her prior work as an assembly worker was light was not necessary to the judgment.

We disagree. Judge Gajewski was required to assess the level of Brewster's past relevant work. Social Security regulations state that "[i]f we find that you have the residual functional capacity to do your past relevant work, we will determine that you can still do your past work and are not disabled. We will not consider your vocational factors of age, education, and work experience or whether your past relevant work exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(b)(3). In other words, if an ALJ finds that a claimant's residual functional capacity matches her past relevant work, the ALJ makes a determination of non-disability at that point (Step 4) and does not move on to Step 5. Brewster's suggestion that Judge Gajewski could have simply resolved her claim at Step 5, without making any findings related to her past

relevant work, is thus in error. Judge Gajewski's finding that Brewster's past relevant work included light work as an assembly line worker was required by the regulations, essential to his ultimate judgment that Brewster was not disabled, and, in the absence of new evidence, precluded a second finding on Brewster's past relevant work by Judge Davis.

**4.      Whether the Commissioner *de facto* reopened the case by accepting new vocational evidence.**

Brewster offers several rather cursory arguments in support of the position that even if collateral estoppel applies in this case, the Commissioner reopened the issue of Brewster's past relevant work. None of these arguments is persuasive.

First, Brewster notes that final decisions of the Commissioner are subject to reopening pursuant to 20 C.F.R. § 404.987. However, this regulation is of no help to Brewster, as the ALJ must find good cause to reopen a determination under the statute, and Judge Davis made no such good cause finding in this case. 20 C.F.R. § 404.989.

Perhaps recognizing this obstacle, Brewster argues that the Commissioner "*de facto*" reopened the issue of Brewster's past relevant work. As evidence of this reopening, Brewster cites the fact that the Commissioner required her to complete a vocational history form, and the Commissioner received an updated analysis from a vocational specialist. However, as Brewster also notes, new and material evidence can be good cause for reopening a claim. Of course, an ALJ would have no way of knowing whether a finding should be revisited in light of new and material evidence if the ALJ simply relied on the past finding. For example, there might have been evidence that Brewster had been gainfully employed since her prior application. Considering a new

vocational history form or a new analysis from a vocational specialist for the purpose of deciding whether a prior finding should be reopened should not be construed as a *de facto* reopening. *See Sayegh v. Sec'y of Health & Human Servs.*, No. 90-1470, 1991 WL 60965 (6th Cir. Apr. 22, 1991) (unpublished); *Rogerson v. Sec'y of Health & Human Servs.*, 872 F.2d 24, 29 n.5 (3d Cir. 1989).

In this case, despite Brewster's claims to the contrary, "new and material evidence" was not submitted. Brewster suggests that the vocational specialist's classification of Brewster's assembly line work as "medium" constitutes such evidence; however, it instead simply represents a different view of the same evidence that was earlier presented to Judge Gajewski. The Commissioner did not *de facto* reopen the case simply by accepting a second vocational history form and a second vocational specialist report in connection with Brewster's second application for benefits.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment to the Commissioner.